UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER B., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:23-CV-05950-TLF <br><br> ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

On April 11, 2021, plaintiff filed their application for DIB under Title II, alleging a disability onset date of April 7, 2013, and a date last insured of December 31, 2018. AR 430-431, 445-446. After the Commissioner denied benefits initially and on reconsideration, plaintiff requested a hearing. AR 221-225, 233-239. The ALJ held three hearings. AR 95-112, 113-171, 172-194. The first hearing was conducted by ALJ Lawrence Lee. AR 97. The second (AR 115) and third (AR 174) hearings were conducted by ALJ Allen Erickson, and ALJ Erickson issued a written decision on May

1

23, 2023, finding that plaintiff was not disabled. AR 66-93. The Appeals Council denied review. AR 1-7.

The ALJ found that plaintiff had the severe impairments of: "bilateral hip labral tears status-post surgeries; cyclic vomiting syndrome with gastroesophageal reflux disease (GERD); tension headaches; and posttraumatic stress disorder (PTSD)." AR 72. Plaintiff testified during the first two hearings. AR 98-111; 123-148, 156-161.

A medical expert, Dr. David B. Peterson, Ph.D., and a vocational expert, Sharon Welter, testified in the second hearing. AR 69, 150-170. Dr. Peterson stated that plaintiff's symptoms and limitations, in his opinion, satisfied each of the criteria for Listing 12.15 regarding PTSD. AR 152. Dr. Peterson agreed with the assessments of Dr. Coder and Dr. Hellings; Dr. Peterson also agreed with the alleged date of onset for PTSD and stated that review every three years would be appropriate. AR 152-155.

A consulting medical expert, Dr. John A. Daller, testified during the third hearing. AR 69, 176-192. Dr. Daller stated that due to cyclical vomiting, which he characterized as eosinophilic esophagitis (AR 179), plaintiff would have a need to rest due to attacks from the eosinophilic esophagitis. AR 181. Plaintiff would likely miss two to three days of work per month, and that plaintiff would be off-task at least one hour per day due to needing to use the restroom, taking a break from the workstation – and this would occur randomly and at will when plaintiff needs it. AR 182, 189-192.

## DISCUSSION

The parties agree that the ALJ committed harmful error, with respect to medical evidence, and plaintiff's statements about symptoms and limitations. Dkt. 18, Defendant's Brief, at 1-2, requesting remand. The issue before the Court is limited to

whether the proper remedy would be a remand for award of benefits, or a remand for further proceedings. *Id.* at 2-10; Dkt. 12, Plaintiff's Opening Brief at 2, 16; Dkt. 19, Reply Brief.

**Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed an analysis that includes three elements all of which must be satisfied for a remand to award benefits. Such remand is generally proper only where:

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The court is prohibited from accepting as true improperly rejected evidence and skipping to the consideration of whether there are outstanding issues that remain. *Leon,* at 1046; *Dominguez v. Colvin,* 808 F.3d 403, 409 (9th Cir. 2015). As to the third step, "the district court must consider the testimony or opinion that the ALJ improperly

rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true." *Dominguez,* at 407.

"Except in rare circumstances," the district court should "remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc., Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014). The Ninth Circuit emphasized in *Leon* that even when each element or the review concerning the appropriate remedy on remand is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045; *see also Burrell v. Colvin,* 775 F.3d 1133, 1141-1142 (9th Cir. 2014) (even assuming all three elements of the criteria for deciding the remedy were satisfied, the Ninth Circuit Court of Appeals found the record as a whole created serious doubt about whether the plaintiff was disabled; remand for award of benefits was therefore unwarranted).

Here, the parties agree that part two of the remedy analysis is satisfied, but the first element – whether the record needs further development, and whether outstanding issues and ambiguity exists that could be addressed on remand – is at issue. *Trevizo,* 871 F.3d at 682-83. Regarding element two, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony.

Regarding element one, plaintiff asserts that a remand for further proceedings in this case would be of limited utility, as no new testimony or medical evaluations regarding plaintiff's condition during the period at issue would be forthcoming, and providing another opportunity to assess improperly evaluated evidence does not qualify

as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

The defendant contends there is a useful purpose to be served by remanding for additional proceedings. According to the defendant, even though there is a fixed period at issue for a decision whether plaintiff qualifies to receive SSDI benefits – April 7, 2013, through December 31, 2018 – the medical record does not fully support the limitations described in plaintiff's statements, or limitations that have been found in the reports of Dr. Daller and Dr. Peterson. Dkt. 18 at 5. Defendant also asserts that the findings of Dr. Hale and Dr. Staley are at odds with Dr. Daller's opinion. *Id.*

Regarding plaintiff's testimony and statements about symptoms and limitations, the ALJ determined that plaintiff's vomiting had started before the alleged onset date and the cyclical vomiting persisted during the relevant period. AR 82. There was no finding of malingering.

The medical evidence considered by the ALJ includes assessments by medical professionals before, during, and after the relevant period. With respect to plaintiff's diagnosis of cyclical vomiting syndrome, the record shows ongoing and persistent symptoms and limitations. Plaintiff was discharged from the United States Army in 2012 because he was vomiting so often he could not perform any work assigned to him. AR 2498-2509.

The longitudinal record shows that during the period between April 7, 2013, through December 31, 2018, plaintiff repeatedly went to the emergency room, urgent

care, and appointments with general practitioners and specialists to obtain treatment for vomiting. AR 1014-1-17 (Dr. Alvarez notes, March 2014); AR 1170 (Dr. Christensen notes, May 2014); AR 1178-1181 (Dr. McPeak, Dr. Noonan, notes, June 2013); AR 1286, AR 1657-1668  (emergency department notes, March 2018); AR 1673-1682 (emergency department notes, December 2017); AR 1716-1717 (notes from PA-C Weissinger, November 2015, plaintiff vomiting for 2 days); AR 1719-1726 (Dr. MacLeod notes, May 2015, plaintiff vomits on a daily basis); AR 1738-1783 (multiple notes during March and April 2014 from various medical providers regarding plaintiff's headaches and vomiting). The record also shows in 2019-2023 that plaintiff continued to have extreme problems with vomiting. AR 2798-2855, 1379-1380, 1139-1144. On one occasion during examination, plaintiff denied vomiting. AR 1711 (reported no vomiting, during examination for hearing loss, 11-22-2016).

Defendant argues that Dr. Hale and Dr. Staley gave assessments in 2021 stating that plaintiff would be able to sufficiently control vomiting and headaches by not engaging in strenuous activity; therefore, a limitation to "light work" was recommended as being consistent with the medical evidence. AR 209-210, 218-220.

Even if the Court assumes (without deciding), for purposes of this analysis, the accuracy of defendant's contention that a remand for additional proceedings would be required to clarify the conflict between medical evidence from Dr. Hale and Dr. Staley, compared with the opinions expressed by Dr. Daller and plaintiff's statements concerning symptoms and limitations pertaining to cyclical vomiting and headaches, the same cannot be said for the evidence concerning plaintiff's mental health conditions.

Regarding mental health and plaintiff's PTSD symptoms and limitations, the medical record has clarity. Plaintiff consistently sought treatment, and the notes of psychiatrists, psychologists, and therapists, document that plaintiff's occupational impairments included at least two marked symptoms and limitations, consistent with Dr. Peterson's assessment. *E.g.*, AR 1075, 1147 (Bradford Smith, MSW, notes dated 7-26-2017, "Veteran continues to maintain all symptoms at least at baseline. However, this should not be interpreted as improvement. Veteran's condition remains a significant impairment. . . ."), 1160, -1167, 1173-1176, 1183-1197 (May and June 2013, initial PTSD assessment by Dr. Hyatt and Dr. Christensen); 2304-2377 (ongoing outpatient therapy for many years). Dr. Richard Coder diagnosed PTSD on June 7, 2012, noting that plaintiff was 23-years-old and already had served five years in the Army. AR 1028-1033. Dr. Hellings made clinical findings on March 18, 2014, showing that plaintiff exhibited severe symptoms that were consistent, continuous, and caused "[o]ccupational and social impairment with reduced reliability and productivity." AR 1021-1024.

Plaintiff testified during the hearings on April 21, and on October 13, 2022, that his only socializing was once per week when he and his spouse attended an American Legion war veteran PTSD group. AR 101. He stated that it was intensely traumatic when he was in the military and in the war areas of Iraq and Afghanistan; for example, on the day he was being transferred out of the Afghanistan war zone due to vomiting, it weighed on plaintiff psychologically, including the fact the "[s]quad leader medic got shot and bled out the day I was leaving." AR 105. Plaintiff stated in the adult function report (8-17-2021) that he goes to coffee shops, and church, but "PTSD makes me get

angry easy and no one understands." AR 536-540. Plaintiff said he only keeps in touch with a few individuals that he served with in the military operations of Iraq or Afghanistan; they check in on each other because their unit had three suicides within a two-year time span. AR 107.

Plaintiff described how there were many times he was awake at night because "shooting into houses with women and children that keep me awake; it was either them or us." AR 110. Plaintiff was in his late teens and early 20's during his time serving in the military and he led troops who were very young people at that time; he had done one tour of duty in Iraq, and one in Afghanistan. AR 128, 137. Between the first tour in Iraq, and the second tour, "I was already seeing psych because Iraq was . . .. There's a bomb everywhere." AR 137. Plaintiff stated that by the time he arrived in his new unit, he "went through hell for 15 months. . .." AR 140. Plaintiff testified he had been attending PTSD meetings and going to therapy for PTSD since 2010. AR 140, 144-145. He had taken medications but, according to his testimony, plaintiff "didn't like how they made me feel to be honest. They were – I was up and I was down, and I was up and I was down, sir. And so I deal with it by basically staying home and meeting other combat vets, talking to my friends who I served with personally." AR 143. Plaintiff stated that he did try medications after his first deployment and a little bit after the second deployment. AR 159.

Plaintiff stated he was "scared to death" to ever again ride in an airplane. AR 146. He continues to have nightmares and flashbacks that are so realistic he loses bladder control. AR 160.

  Dr. Gilbert stated (9-14-2021) that plaintiff's medical records contain insufficient information for rating functional impairments with respect to plaintiff's mental health conditions. AR 207, 217. Dr. Gilbert did not review Dr. Peterson's assessment, because she issued her opinion about one year later. Dr. Peterson (10-13-2022) testified that plaintiff experienced "fatigue, irritability, aggression, anxiety, depression, and changes to personality." AR 153. Dr. Peterson opined that plaintiff met the criteria for Listing 12.15; Dr. Peterson found plaintiff had a marked inability to interact with others and marked inability to adapt. AR 152-153. These marked limitations were rejected by the ALJ; the ALJ did not include them in either the hypothetical to the VE or the ALJ's assessment of plaintiff's residual functional capacity. AR 75-76, 163.

  The defendant argues that Dr. Staley and Dr. Hale have opinions that create ambiguity. Yet they provided opinions based on plaintiff's longitudinal medical records, and those records would not change on remand. The purpose of remand for additional proceedings is to provide more clarity in the record, but because this is a closed period at issue, no additional medical information is available.

  The court is prohibited from accepting as true improperly rejected evidence and skipping to the consideration of whether there are outstanding issues that remain. *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017); *Dominguez v. Colvin,* 808 F.3d 403, 409 (9th Cir. 2015). The Court disagrees with defendant that remand for additional proceedings is required, to allow the Commissioner an opportunity to resolve ambiguity concerning the opinions of Dr. Staley and Dr. Hale when compared with opinion of Dr. Haller. The points of contention between these experts are related to plaintiff's headaches and vomiting.

There is no arguable conflict in the evidence relating to plaintiff's mental health symptoms and limitations connected to plaintiff's condition of PTSD. Dr. Gilbert merely stated an opinion that evidence was insufficient to make any finding. But Dr. Gilbert's opinion did not directly refute any of the evidence provided by the opinions of Dr. Peterson. The ALJ's decision agreeing with Dr. Gilbert's finding of insufficient evidence and rejecting Dr. Peterson's opinion as well as plaintiff's statements about PTSD-related symptoms and limitations, is not supported by substantial evidence in the record. *Biestek v. Berryhill,* 587 U.S. 97 (2019); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-1041 (9th Cir. 2007). As to the plaintiff's PTSD symptoms and limitations, there is no ambiguity or conflict that would be resolved through a new hearing on remand. *See, Ferguson v. O'Malley,* 95 F.4th 1194, 1200 (9th Cir. 2024) (the ALJ cannot render the claimant's testimony superfluous by demanding that positive objective evidence in the medical record fully corroborates each allegation plaintiff makes in their subjective testimony.)

Therefore, the Court will remand for award of benefits on the basis that there is no ambiguity to be resolved; the record supports Dr. Peterson's assessment and plaintiff's statements that mental health conditions experienced by plaintiff show consistent and persistent symptoms of PTSD and result in marked limitations in plaintiff's ability to interact with others in the workplace and marked limitations in plaintiff's ability to adapt in the workplace. If plaintiff's statements, and Dr. Peterson's opinions are credited as true, plaintiff would necessarily be found disabled under the relevant criteria of Listing 12.15. *Disability Evaluation Under Social Security, 12.00 Mental Disorders - Adult*, https://www.ssa.gov/disability/professionals/bluebook/ 12.00-

Mental Disorders-Adult (accessed on 10-24-2024). Under *Garrison v. Colvin*, 759 F.3d 995, 1020-1023 (9th Cir. 2014) and other Ninth Circuit precedent, this case fits the unusual, rare, category of situations where remand for award of benefits is appropriate.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for award of benefits.

Dated this 29th day of October, 2024.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge